**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WASTE-TO-ENERGY ASSOCIATION,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 23-2726 (JEB)** |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,** | |
| **Defendants.** | |

<u>**MEMORANDUM OPINION**</u>

Waste-to-Energy Association, a national trade organization representing municipal entities and companies that own and operate municipal waste combustors, filed this lawsuit against the Environmental Protection Agency and its Administrator two months ago. It claims that EPA has failed to perform a statutorily required analysis of its regulations governing large municipal waste combustors (LMWCs) to determine whether they adequately limit the residual risk to the public. A separate lawsuit — brought by different plaintiffs — concerning EPA's alleged failure to perform another statutorily required analysis related to those regulations has been pending before this Court for over one-and-a-half years. Following negotiations between those plaintiffs and EPA, a motion to enter a consent decree is now pending in that case.

WTEA now asks the Court to consolidate this action with that one and to postpone acting on the proposed consent decree until it can be heard. Because the lawsuits are at disparate stages and on vastly different timelines, however, consolidating the cases would not promote convenience or judicial economy. In addition, consolidation is not a tool to collaterally attack a proposed settlement in another lawsuit. The Court will accordingly deny Plaintiff's Motion.

I.      **Background**

   A.  Legal Background

The Clean Air Act requires EPA to "establish performance standards" for solid-waste incinerators, including LMWCs, that discharge air pollutants.  See 42 U.S.C. § 7429(a)(1)(A). EPA refers to those standards as the "maximum achievable control technology" or "MACT" standards.  Nat'l Ass'n of Clean Water Agencies v. EPA, 734 F.3d 1115, 1119 (D.C. Cir. 2013).

   EPA must periodically revisit its MACT standards pursuant to two statutory requirements.  First, section 7429(a)(5) requires the agency to "review" and "revise" them every five years to ensure that they continue to comply with various statutory requirements.  See 42 U.S.C. § 7429(a)(5).  Second, sections 7412(f)(2)(A) and 7429(h)(3) direct EPA to "conduct a one-time review within 8 years of promulgating a[] [MACT] standard to, among other things, evaluate the residual risk to the public . . . and promulgate more stringent limits as necessary 'to provide an ample margin of safety to protect public health.'"  Louisiana Env't Action Network v. EPA, 955 F.3d 1088, 1093 (D.C. Cir. 2020) (quoting 42 U.S.C. § 7412(f)(2)(A)); see 42 U.S.C. § 7429(h)(3) (rendering section 7412(f)(2)(A) applicable to MACT standards for LMWCs).

   B.  Factual Background

   EPA promulgated its initial MACT standards for LMWCs in 1995 and issued revised standards in 2006.  See 60 Fed. Reg. 65,387 (Dec. 19, 1995); 71 Fed. Reg. 27,324 (May 10, 2006).  Sierra Club petitioned for review of the revised standards in the D.C. Circuit, and WTEA — going by a different name — intervened.  See Order, Sierra Club v. EPA, No. 06-1250 (D.C. Cir. Aug. 18, 2006).  EPA sought a voluntary remand to review its revisions, and the Circuit granted that request in 2008.  See Order, Sierra Club, No. 06-1250 (D.C. Cir. Feb. 15, 2008).

After thirteen years of no action from EPA on the revised MACT standards, several environmental groups — East Yard Communities for Environmental Justice, Ironbound Community Corporation, and Sierra Club (collectively, "East Yard") — filed a petition for a writ of mandamus in the D.C. Circuit and a Complaint against EPA in this Court.  In re East Yard Cmtys. for Env't Just., No. 21-1271 (D.C. Cir. filed Dec. 21, 2021), Doc. No. 1928045 (East Yard Pet.); East Yard Cmtys. for Env't Just. v. EPA, No. 22-94 (D.D.C. filed Jan. 13, 2022), ECF No. 1 (East Yard Compl.).  The petition asked the Circuit to order EPA to comply with the 2008 remand by revising the MACT standards for LMWCs.  See East Yard Pet. at 33.  The lawsuit alleged that EPA had failed to perform its duty to review its MACT standards for LMWCs every five years under 42 U.S.C. § 7429(a)(5).  See East Yard Compl., ¶¶ 52, 54(b).

East Yard and EPA subsequently began negotiating an agreement to settle both cases.  In May 2022, WTEA — going by yet another name — filed a notice in the Circuit of its "[c]ontinued [s]tatus as [i]ntervenor" in light of its involvement in Sierra Club and, in the alternative, moved for leave to intervene.  In re East Yard, Doc. No. 1947445  (WTEA Notice & Mot.).  The Circuit did not act on that filing, and negotiations between the East Yard parties continued.  East Yard and EPA reached an agreement in May 2023 and, accordingly, lodged a proposed consent decree in this Court establishing a deadline for EPA to review and revise the MACT standards for LMWCs.  East Yard, ECF No. 22 (Notice of Lodging of Proposed Consent Decree).  WTEA submitted a comment opposing entry of the consent decree.  See ECF No. 7-2 (Letter from WTEA to EPA).

Following the notice-and-comment period, the parties in East Yard jointly moved this Court to enter the consent decree.  East Yard, ECF No. 24 (Joint Mot. to Enter Consent Decree). EPA noted that, in its view, WTEA's comment was "not sufficiently adverse to justify

withdrawing its agreement to the proposed consent decree." Id., ¶ 6.  The motion to enter the

consent decree in East Yard is presently pending, and the Circuit is holding In re East Yard in

abeyance pending its resolution.  See Order, In re East Yard (D.C. Cir. Oct. 25, 2023).

      C.  Procedural Background

      WTEA filed its Complaint in this action on September 18, 2023.  See ECF No. 1

(Compl.).  It claims that EPA has failed to perform its non-discretionary duty to conduct a

residual-risk review for the MACT standards for LMWCs in accordance with 42 U.S.C. §§

7412(f)(2)(A) and 7429(h)(3).  See Compl., ¶¶ 32–34, 35(b).

      Three days after initiating its action, Plaintiff filed a Motion to Consolidate its case with

East Yard.  See ECF No. 7 (Mot. to Consolidate).  WTEA contends that both cases "involve

failure[s] by [EPA] to perform closely related, non-discretionary actions" such that consolidation

would be "efficien[t] for all parties and the Court."  Id. at 1, 8.  Plaintiff argues, moreover, that

under the Clean Air Act, EPA cannot conduct the five-year review contemplated in the pending

consent decree in East Yard without also conducting the residual-risk review that Plaintiff seeks

in the present action.  Id. at 6–8.  WTEA's Motion, accordingly, asks the Court not only to

consolidate the cases but also to "withhold action on the Consent Decree in the East Yard case

until the Court has an opportunity to hear from the parties in both cases as to the potential

effects of the Consent Decree on WTEA's claims and EPA's statutory obligations."  Id. at 5.

## II.   Legal Standard

      Under Federal Rule of Civil Procedure 42(a), a court may consolidate separately filed

cases that involve a common question of law or fact.  See Fed. R. Civ. P. 42(a).  "The decision

whether to consolidate cases under Rule 42(a) is within the broad discretion of the trial court."

Stewart v. O'Neill, 225 F. Supp. 2d 16, 21 (D.D.C. 2002).  The Court may consider, among other

things, whether consolidation would "promote convenience and judicial economy, simplify management of the cases, facilitate global resolution of the claims, [or] conserve judicial resources."  Singh v. Carter, 185 F. Supp. 3d 11, 18 (D.D.C. 2016) (cleaned up).  Consolidation is generally not appropriate where "the parties at issue, the procedural posture and the allegations in each case are different."  Colbert v. FBI, 275 F.R.D. 30, 32 (D.D.C. 2011) (citation omitted).

## III.    Analysis

In opposing Plaintiff's Motion, Defendants and East Yard offer a surfeit of reasons not to consolidate this action with East Yard.  See ECF No. 9 (Def. Opp.); ECF No. 16 (East Yard Opp.).  Setting aside whether the cases share a common question of law or fact, the Court finds that consolidation is not a wise course here for three reasons.

First, as EPA observes, "[T]he postures of these cases are miles apart."  Def. Opp. at 3; see East Yard Opp. at 10–11.  The plaintiffs in East Yard filed suit in January 2022, and, after a year of negotiations, East Yard and EPA have moved to enter a consent decree that would resolve the litigation entirely.  Under that consent decree, EPA will propose any revisions to the MACT standards for LMWCs by December 31, 2023, and issue its final rule by November 30, 2024.  East Yard, ECF No. 24-1 (Proposed Consent Decree).  By contrast, WTEA filed this suit less than two months ago.  It has not even served its Complaint yet, meaning that EPA's response will not be due until January 2024 at the earliest.  See Def. Opp. at 4 (citing Fed. R. Civ. P. 12(a)(2)).  Briefing in this action will, consequently, extend beyond at least the first consent-decree deadline.  Those starkly different timetables — and the delay that consolidation would cause in East Yard — strongly counsel against consolidating the cases.  See Stewart, 225 F. Supp. 2d at 21 ("judicial efficiency would not be served" by consolidation of cases "in vastly different procedural postures").

Second, the Court is not persuaded that consolidation would prove convenient or economical for judicial resources.  See Singh, 185 F. Supp. 3d at 18.  These matters involve EPA's failure to perform distinct duties: East Yard concerns the five-year review, while this action concerns the residual-risk review.  See Nat'l Ass'n for Surface Fishing v. EPA, 795 F.3d 1, 5 (D.C. Cir. 2015) (referring to analogous reviews as "distinct, parallel analyses" that EPA undertakes "[s]eparately").  Plaintiff cites no statutory provision requiring that the residual-risk review precede or be conducted simultaneously with the five-year review.

Even if WTEA were correct that the Clean Air Act mandates such sequencing, however, that does not favor granting its Motion.  As East Yard points out, "[N]othing in the proposed Consent Decree precludes EPA from performing the residual-risk assessment 'in advance of or together with' the Consent Decree's 2024 rulemaking deadline."  East Yard Opp. at 8.  In fact, "the consent decree broadly requires EPA to update the standards 'in accordance with 42 U.S.C. § 7429,' which . . . is the statutory provision from which EPA's risk-assessment obligation stems."  Id.  Neither denial of consolidation nor entry of the East Yard consent decree would "prevent EPA from completing the residual-risk analysis on a timeline that is acceptable to WTEA," id. at 9, or impede the Court's ability to, at the appropriate time in this litigation, order EPA to complete that review by a deadline consistent with the purported statutory sequencing.  The Court, therefore, does not see how consolidation would be more efficient than entering the East Yard consent decree and handling this separate matter as exactly that — a separate matter.

Finally, consolidation is a "docket-management tool," Fox v. Am. Airlines, Inc., 389 F.3d 1291, 1294 (D.C. Cir. 2004), not a means for one plaintiff to collaterally attack another plaintiff's (and defendant's) settlement.  Insofar as WTEA is dissatisfied with the East Yard consent decree, as Defendants note, it already had opportunities to object.  See Def. Opp. at 5.

For one, it had — and, indeed, availed itself of — the chance to submit comments for EPA's consideration.  See Letter from WTEA to EPA.  For another, Plaintiff could have attempted to intervene in the district court in East Yard.  See Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 529 (1986) (while intervenor "does not have power to block [consent] decree merely by withholding its consent," it "is entitled to present evidence and have its objections heard").

East Yard posits that WTEA did not attempt to intervene in East Yard because it would not have been able to establish an injury-in-fact sufficient to confer standing under D.C. Circuit precedent.  See East Yard Opp. at 5–6 (citing Defs. Of Wildlife v. Perciasepe, 714 F.3d 1317, 1325 (D.C. Cir. 2013); Env't Integrity Project v. Pruitt, 709 F. App'x 12 (D.C. Cir. 2017)).  As East Yard sees it, Plaintiff is now "seeking to do through consolidation what it cannot do through intervention," East Yard Opp. at 6, and the Court "should not allow WTEA to achieve through gamesmanship what it would not be able to achieve through normal litigation practice."  Id. at 1.  WTEA rejoins that this argument is both "inaccurate and irrelevant."  ECF No. 19 (Reply) at 8.

The Court need not decide whether WTEA could have shown standing to intervene in East Yard, however, nor will it speculate about why Plaintiff has adopted its chosen litigation strategy.  Regardless of WTEA's motives, the Court agrees with Defendants that Plaintiff's Motion effectively amounts to "a collateral attack on the proposed consent decree in East Yard" by "us[ing] consolidation, a case management tool, to get a second (or third) bite at the apple."  Def. Opp. at 5.  That is plainly not the purpose of consolidation.

## IV.    Conclusion

For the foregoing reasons, the Court will deny the Motion to Consolidate.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  November 9, 2023