UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASTE-TO-ENERGY ASSOCIATION,<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, in his official capacity as Administrator of the Environmental Protection Agency,<br><br>    Defendants. | Case No. 23-CV-2726 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EPA'S MOTION TO DISMISS**

  Plaintiff, Waste-to-Energy Association, is a trade organization of owners and operations of large municipal waste combustors ("MWCs") that are required to abide by emissions standards. Plaintiff advances only one claim in this action: that EPA failed to perform an alleged nondiscretionary duty to conduct a residual risk review under the Clean Air Act. To remedy this claim, however, Plaintiff asks the Court not just to order EPA to perform the alleged nondiscretionary duty but to mandate EPA to conduct the residual risk review prior to another, distinct statutory duty: the five-year review. Nowhere in the Complaint, however, does Plaintiff explain how it would be injured should EPA prioritize these reviews differently than Plaintiff

1

prefers or how any order from this Court could redress such an injury. At most, Plaintiff advances a theory of harm built on a chain of speculation about future actions that cannot support standing. And even if Plaintiff sought only to compel EPA to perform the residual risk review, the Complaint fails entirely to explain why Plaintiff, an organization of regulated entities, has been injured by EPA's nonperformance of a review designed to determine whether more stringent standards are necessary. Accordingly, the Court should grant EPA's motion and dismiss the action for lack of standing.

## BACKGROUND

The Clean Air Act requires EPA to promulgate performance standards for certain solid waste incinerators including large municipal waste combustors ("MWCs"), based on maximum achievable control technologies. 42 U.S.C. § 7429. These are known as "MACT standards." The Act further requires EPA to review and, if appropriate, revise those standards every five years (the "five-year review"). *Id.* § 7429(a)(5). When EPA conducts the five-year review, EPA determines whether there have been technological improvements in pollution control. It then evaluates those improvements in light of technical feasibility, costs, energy implications, and non-air environmental impacts, as well as potential emission reductions to determine whether they warrant updates to the MACT standards.

Separately, the Act directs EPA to evaluate whether further revision of the MACT standards is necessary to "provide an ample margin of safety to protect public health" (the "residual risk review"). *Id.* §§ 7412(f)(2), 7429(h)(3). When conducting the residual risk review, EPA follows a two-step approach. *See NRDC v. EPA*, 529 F.3d 1077, 1083 (D.C. Cir. 2008) (upholding this approach for residual risk reviews). EPA first determines acceptable risks based on available health

information and, if it concludes that the risks are unacceptable, EPA identifies the necessary emission standard to bring risks to acceptable levels without consideration of cost. EPA then determines whether further revision of the standards is necessary to provide an ample margin of safety, based on health factors as well as other considerations like costs, energy, and safety.

EPA initially promulgated MACT standards for large MWCs in 1995, 60 Fed. Reg. 65387 (Dec. 19, 1995), and revised those MACT standards in 2006, 71 Fed. Reg. 27324 (May 10, 2006). The revised MACT standards were challenged in the D.C. Circuit, in response to which EPA requested and was granted a voluntary remand. Order, *Sierra Club v. EPA*, No. 06-1250 (D.C. Cir. Feb. 15, 2008), Doc. No. 1099358. In recent years, several environmental groups filed a petition for a writ of mandamus in the D.C. Circuit, seeking to prompt EPA to take action on remand. *In re East Yard Cmtys. for Env't Just.*, No. 21-1271 (D.C. Cir. filed Dec. 21, 2021), Doc. No. 1928045. The same environmental groups also filed a complaint in this Court alleging that EPA had failed to perform a nondiscretionary duty to review its MACT standards for large MWCs every five years, as required by 42 U.S.C. § 7429(a)(5). *East Yard Cmtys. for Env't Just.*, No. 22-cv-94 (D.D.C. filed Jan. 13, 2022) ("*East Yard*"). EPA and the environmental groups negotiated and agreed to a consent decree to resolve both the D.C. Circuit matter and *East Yard*. On November 9, 2023, the Court entered the consent decree. Order, *East Yard*, ECF No. 30.

In the present action, Plaintiff claims that EPA failed to perform an alleged nondiscretionary duty to conduct the residual risk review under 42 U.S.C. § 7412(f) and § 7429(h)(3). Compl. ¶ 33 (ECF No. 1). Plaintiff alleges that its "members and the communities they serve are directly affected by [EPA's large MWC regulations] and will be further affected by whatever decisions EPA makes in its residual risk analysis." *Id.* ¶ 12. Plaintiff asserts that EPA

must "perform the required residual risk analysis prior to or concurrent with [the five-year] review and revision of the MACT standards," because "[w]hether or not there are residual risks should inform EPA's consideration of any decision to revise the MACT standard." *Id.* ¶¶ 25, 28. On this basis, they assert that "[a]n order mandating that EPA perform the required residual risk analysis on the timeline set forth in this Complaint"—by which they mean prior to the five-year review—"would redress their injuries." *Id.* ¶¶ 13, 35(b). By contrast, if EPA were to conduct the five-year review before the residual risk review, Plaintiff alleges that EPA's residual risk review would be "needlessly delay[ed]" and "impose additional administrative burdens" on them. *Id.* ¶ 29.

Before the Court entered the consent decree in *East Yard*, Plaintiff filed a Motion to Consolidate this action with *East Yard*. Pl.'s Mot. to Consolidate, ECF No. 7. EPA opposed that Motion on September 29, 2023. Defs.' Opp'n to Mot. to Consolidate, ECF No. 9. Plaintiffs in *East Yard* then sought leave to file an opposition to that motion, ECF No. 12, which the Court granted on October 6, 2023, via minute order. The Court denied the Motion on November 9, 2023—the same day the Court entered the consent decree in *East Yard*. Order & Mem. Op., ECF Nos. 21-22. In doing so, the Court noted that the two cases "involve EPA's failure to perform distinct duties: *East Yard* concerns the five-year review, while this action concerns the residual-risk review," and that Plaintiff had failed to cite any "statutory provision requiring that the residual-risk review precede or be conducted simultaneously with the five-year review." Mem. Op. at 6.

## STANDARD OF REVIEW

To satisfy Article III of the Constitution's "case" or "controversy" requirement, a plaintiff must have standing. The "irreducible constitutional minimum of standing contains three elements": (1) an actual or imminent, concrete "injury in fact"; (2) a causal connection between

the injury and the conduct complained of" such that the injury is "fairly traceable to the challenged action"; and (3) likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up). The party invoking jurisdiction bears the burden of establishing these elements, and each must be supported in the same way as any other matter on which the plaintiff bears the burden of proof. *Id.* at 561. Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

## ARGUMENT

Plaintiff has failed to allege facts sufficient to demonstrate the necessary elements of standing.[1]

### I. Plaintiff Has Failed to Allege a Cognizable Theory of Standing Related to the Five-Year Review.

In this action, Plaintiff seems to advance a theory of standing related to the five-year review, although the precise contours of any such theory are difficult to parse. Plaintiff alleges only that

---

[1] Although challenges to final agency action are subject to review on the administrative record, Plaintiff here alleges that EPA failed to act. In such cases, an administrative record does not yet exist, *see Mohammad v. Blinken*, 548 F. Supp. 3d 159, 163 n.2 (D.D.C. 2021) (where an agency failed to act, there is no administrative record for a federal court to review), and Local Civil Rule 7(n) thus has no application. Accordingly, EPA formally moves to waive compliance with the requirements of this rule, consistent with the approach taken by other courts in this jurisdiction. *See Desai v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-1005 (CKK), 2021 WL 1110737, at *5 n.7 (D.D.C. Mar. 22, 2021) (collecting cases waiving compliance with Rule 7(n) in challenges to alleged inaction). Even if the Court disagrees and deems Rule 7(n) applicable, however, this motion does not implicate the contents of any such record. As such, EPA requests, in the alternative, that the Court vacate any obligation to file a certified list of contents for purposes of deciding its motion. *See Mdewakanton Sioux Indians of Minnesota v. Zinke*, 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) ("[C]onstruing Defendants' motion to dismiss as incorporating a motion to waive compliance with Local Civil Rule 7(n), the Court grants the motion because the administrative record is not necessary for its decision here.") (citation omitted); *see also Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (waiving Local Civil Rule 7(n)'s requirement, "follow[ing] the practice of other courts in this jurisdiction when the administrative record is not necessary for the court's decision regarding a motion to dismiss") (citations omitted)).

5

EPA should complete the residual risk review prior to the five-year review because "[w]hether or not there are residual risks should inform EPA's consideration of any decision to revise the MACT standard," and that an order to perform these reviews in its preferred order would redress its unstated injuries. Compl. ¶¶ 25, 28. In the motion to consolidate briefing, Plaintiff argued, without elaboration, that it would "be harmed if MACT standards (without any residual risk analysis) are made more stringent" via the five-year review, "but a later residual risk analysis concludes that such standards were unnecessary." Pl.'s Reply to East Yard Communities for Environmental Justice et al.'s Opp'n to Pl.'s Mot. to Consolidate, No. 1:23-cv-2726-JEB (D.D.C. Oct. 20, 2023) (ECF No. 19).

To begin, this Court already rejected Plaintiff's theory that the residual risk review and five-year review are tethered in this way, describing the reviews as "distinct duties" and noting the absence of any "statutory provision requiring that the residual-risk review precede or be conducted simultaneously with the five-year review." Mem. Op. at 6. To the extent that the Court's observation is not dispositive, however, Plaintiff's theory is still conjectural because it assumes, at a minimum, that:

1. EPA's residual risk review (which it has not yet conducted) would uncover certain information that would also have relevance to EPA's separate and distinct five-year review,

2. EPA would not be aware of that allegedly relevant information without having first conducted the residual risk review,

3. Any rulemaking that EPA takes pursuant to its five-year review would fail to meaningfully account for such information, and

4. That five-year review rulemaking will harm Plaintiff because of its failure to account for that information.

6

Any conceivable standing theory related to the five-year review, however, is not premised on a present or imminent injury, nor is it traceable to the nonperformance of the residual risk review. In order to confer standing, an alleged injury must be "certainly impending to constitute injury in fact"; allegations of possible future injury cannot suffice. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *United Transp. Union v. ICC*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events . . . and those which predict a future injury that will result from present or ongoing actions . . . ."). Moreover, Plaintiff needs to show that it is "substantially likely" that each link in this multi-step causal chain would come to fruition. *Waterkeepers All., Inc. v. Regan*, 41 F.4th 654, 663 (D.C. Cir. 2022).

The "speculative chain of possibilities" above does not satisfy these requirements. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Plaintiff merely hints at a potential future injury, which would depend on the outcome of a future rulemaking. Specifically, Plaintiff speculates that it will necessarily be injured if the five-year review is conducted before the residual risk review, based on some unarticulated connection between the two reviews. That causal assumption is dubious in light of the different scopes and considerations of these reviews. The residual risk review assesses health and environmental risks resulting from potential emissions; the five-year review, in contrast, concerns the technology landscape for controlling emissions. Even if certain information were relevant to both reviews, there is no basis to assume that EPA would overlook that information in its five-year review merely because it had not performed the separate residual risk review.

Not only is the causal chain attenuated, but the injury-causing event (the five-year review) is not even the alleged duty at issue in this action. Any injury under this theory would not result from the nonperformance of the residual risk review, but instead from the supposed effect that the nonperformance will have on the five-year review. Notably, if Plaintiff is eventually harmed by the five-year review, it will have the opportunity to challenge that review in due course. But any hypothetical injury stemming from that statutory exercise cannot be traced to the alleged nonperformance here. Ultimately, Plaintiff's theory is too conjectural to confer standing, especially where courts are "loath to find standing when redress depends largely on policy decisions yet to be made by government officials." *US Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).

The flaws in Plaintiff's theory of standing are underscored by the non-redressability of any supposed injury. A court's power to grant relief in suits brought under 42 U.S.C. § 7604(a)(2), like this one, "is limited to requiring EPA to undertake the nondiscretionary duty at issue." *Sierra Club v. Browner*, 130 F. Supp. 2d 78, 82 (D.D.C. 2001), *aff'd sub nom. Sierra Club v. Whitman*, 285 F.3d 63 (D.C. Cir. 2002). Section 7604(a)(2) is "not designed to permit review of the performance of those functions, nor to permit the court to direct the manner in which any discretion given the Administrator in the performance of those functions should be exercised." *New York Pub. Int. Rsch. Grp., Inc. v. Whitman*, 214 F. Supp. 2d 1, 3 (D.D.C. 2002). So even if Plaintiff had sufficiently pled an injury, which it has not, the only possible remedy that this Court could order is an instruction to EPA to conduct the residual risk review. But that remedy, of course, would not on its own redress Plaintiff's alleged injury stemming from the five-year review.

## II. Plaintiff Has Failed to Demonstrate Standing Related to EPA's Alleged Nonperformance of the Residual Risk Review.

Plaintiff has not even alleged standing to support a more run-of-the-mill nondiscretionary duty claim. The Clean Air Act permits a citizen to file an action against EPA "where there is an alleged failure of the [agency] to perform any act or duty under this chapter which is not discretionary." 42 U.S.C. § 7604(a)(2). If the court determines that the agency failed to perform a nondiscretionary duty, the Act authorizes it to order the agency "to perform such act or duty." *Id*. To adequately plead standing for such a claim, Plaintiff must allege that it has suffered an injury as a result of the alleged nonperformance that can be redressed by a favorable ruling. Plaintiff has failed to do so.

Nowhere in the Complaint does Plaintiff explain how EPA's failure to perform the residual risk review has caused injury to it or its members, regulated entities subject to the MACT standards. At most, Plaintiff alleges that its members will be "affected by whatever decisions EPA makes in its residual risk analysis." Compl. ¶ 12. Such conclusory allegations are insufficient to confer standing. *Kareem v. Haspel*, 986 F.3d 859, 865-66 (explaining that neither "threadbare recitals of the elements of standing, supported by mere conclusory statements" do not suffice, nor will courts "accept inferences that are unsupported by the facts set out in the complaint" (cleaned up)). The shortcomings are hardly surprising when one considers the purpose and possible outcomes of the residual risk review. In Plaintiff's words, "the residual risk provisions of [the Act] require EPA to determine whether new standards are required . . . to provide an ample margin of safety to protect public health or to prevent … an adverse environmental effect." Compl. ¶ 26 (citing 42 U.S.C. §§ 7429(h)(3), 7412(f)(2)(A). There are only two possible outcomes to this residual risk review: a determination that additional standards are not necessary (which would

9

preserve the status quo) or a determination that such standards are necessary (which would result in more stringent standards). The Complaint fails to offer any explanation for how EPA's *failure to perform* this review could have injured a group of regulated entities that is already required to abide by the existing emissions standards. *See id.* ¶¶ 9, 12. Plaintiff simply cannot claim to be injured by EPA's alleged nonperformance, nor can it demonstrate how an order to compel EPA to perform the residual risk review would redress any supposed injury.

Nor does Plaintiff's alleged status as a membership organization change the calculus. While an association may have standing to assert the claims of its members, it must, at a minimum, allege that "at least one of its members would have standing to sue in his own right." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002). However, the Complaint does not include any details about Plaintiff's members or how they could have been injured by EPA's alleged inaction. Nor is there any conceivable theory that any particular member has been harmed by EPA's failure to consider whether to tighten the standards. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (plaintiff-organizations must "make specific allegations establishing that at least one identified member had suffered or would suffer harm").

Plaintiff's suit does not allege a procedural rights violation, as nonperformance of a duty is distinct from failure to follow a required procedure such as the notice-and-comment process. But to the extent Plaintiff attempts to argue otherwise, its case fares no better under a procedural-right theory, where a party must establish that the omitted procedure "will cause the essential injury to the plaintiff's own interest." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 665 (D.C. Cir. 1996). "Deprivation of a procedural right without some concrete interest that is affected by the deprivation is insufficient to create Article III standing." *Spokeo*, 578 U.S. at 341. For reasons already

explained, Plaintiff cannot point to any concrete interest of its own or its members in the residual risk review or harm resulting from its alleged nonperformance. *See Ctr. For Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005) (a court may "relax—while not wholly eliminating—the issues of imminence and redressability, but not the issues of injury in fact or causation" when considering a procedural rights theory of standing).

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action due to lack of standing.

Dated: December 15, 2023

                                            */s/ Caitlin McCusker*
                                        Caitlin McCusker
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Environment & Natural Resources Division
                                        Environmental Defense Section
                                        P.O. Box 7611
                                        Washington, D.C. 20044
                                        Tel: (202) 514-1950
                                        Fax: (202) 514-8865
                                        Caitlin.McCusker@usdoj.gov

                                        Overnight delivery:
                                        4 Constitution Square
                                        150 M Street, NE
                                        Room 4.1110
                                        Washington, D.C. 20002

                                        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on December 15, 2023, I filed the foregoing with the Court's CMS/ECF system, which will notify each party.

                                        */s/ Caitlin McCusker*
                                        Caitlin McCusker