UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASTE-TO-ENERGY ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*, <br><br> Defendants. | Civil Action No. 23-2726 (JEB) |

## MEMORANDUM OPINION

Plaintiff Waste-to-Energy Association, a trade organization representing municipal incinerator operators, sued to compel the Environmental Protection Agency to complete a regulatory evaluation required under the Clean Air Act, 42 U.S.C. §§ 7412(f)(2)(A), 7429(h)(3). EPA now moves to dismiss for lack of standing, arguing that Plaintiff's Complaint is a smokescreen behind which lies no real injury. Because this Court finds that the relief WTEA seeks is no longer available, it will dismiss the Complaint as moot, but provide Plaintiff an opportunity to amend.

**I.      Background**

The Clean Air Act requires EPA to set emissions regulations, known as "maximum achievable control technology" (MACT) standards, for solid-waste incinerators. See 42 U.S.C. § 7429(a)(1)(A). The CAA also requires EPA to periodically revisit these standards pursuant to two statutory provisions. First, 42 U.S.C. § 7429(a)(5) obligates the agency to "review" and "revise" the MACT standards every five years to ensure that they continue to comply with various statutory criteria. Second, §§ 7412(f)(2)(A) and 7429(h)(3) mandate that

1

EPA "conduct a one-time review within 8 years of promulgating a[] [MACT] standard to . . . evaluate the residual risk to the public . . . and promulgate more stringent limits as necessary 'to provide an ample margin of safety to protect public health.'" La. Env't Action Network v. EPA, 955 F.3d 1088, 1093 (D.C. Cir. 2020) (quoting 42 U.S.C. § 7412(f)(2)(A)). EPA, however, has not consistently reviewed the MACT standards applicable to large municipal waste combustors (LMWCs) for statutory compliance since they were promulgated in 1995, nor has it ever completed a residual-risk review. See Waste-to-Energy Ass'n v. EPA, 2023 WL 7407303, at *1–2 (D.D.C. Nov. 9, 2023). A separate suit recently produced a consent decree that requires EPA to issue a final rule reviewing the MACT standards for LMWCs by November 30, 2024. See East Yard Cmtys. for Env't Just. v. EPA, No. 22-94, ECF No. 30, at 3 (D.D.C. Nov. 9, 2023) (Consent Decree). This action, by contrast, concerns residual-risk reviews.

  WTEA is a national trade organization representing municipal entities and partnering companies operating municipal waste combustors, including LMWCs. See ECF No. 1 (Compl.), ¶ 9. On September 18, 2023, it sued EPA, seeking declaratory and injunctive relief from this Court requiring the agency to complete the residual-risk review of the MACT standards for LMWCs at the same time as or before it promulgated its latest MACT standards. Id., ¶¶ 1, 16, 32–35. WTEA initially attempted to consolidate its suit with East Yard, but that attempt was rejected; as this Court noted at the time, the attempt to consolidate "effectively amount[ed] to a collateral attack on the proposed consent decree." Waste-to-Energy Ass'n, 2023 WL 7407303 at *4 (internal quotations omitted). WTEA has continued its suit undeterred, and on December 15, EPA moved to dismiss for lack of standing. See ECF No. 23 (MTD).

## II.     Legal Standard

Because Defendants move to dismiss for lack of standing, this Court will apply the standards of Federal Rule of Civil Procedure 12(b)(1).  Under that rule, a plaintiff must show that a court has subject-matter jurisdiction to hear her claim.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  "Absent subject matter jurisdiction over a case, the court must dismiss [the claim]."  Bell v. U.S. Dep't of Health & Hum. Servs., 67 F. Supp. 3d 320, 322 (D.D.C. 2014).  "A Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), which includes the obligation to consider issues of mootness.  See Mine Reclamation Corp. v. FERC, 30 F.3d 1519, 1522 (D.C. Cir. 1994).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)) (alteration in original).  Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

## III.    Analysis

To establish the jurisdiction of the federal courts, a plaintiff must demonstrate that a "case" or "controversy" exists within the meaning of Article III of the Constitution, and that she is properly situated to pursue that action in court.  Article III, importantly, limits federal courts'

jurisdiction to "actual, ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988). A court's determination of its jurisdiction under that standard is governed by several interrelated doctrines, including standing and mootness. While standing probes "the plaintiff's 'concrete stake' at the outset of the litigation, mootness depends on whether the parties maintain 'a continuing interest' in the litigation today." Hardaway v. Dist. of Columbia Housing Auth., 843 F.3d 973, 979 (D.C. Cir. 2016) (quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc., 528 U.S. 167, 191–92 (2000)). For that reason, "mootness must be assessed at 'all stages' of the litigation to ensure a live controversy remains." Aref v. Lynch, 833 F.3d 242, 250 (D.C. Cir. 2016) (citation omitted). Although neither party has argued that this case is moot, the Court is obliged to address the issue *sua sponte* because mootness goes to its jurisdiction. See Mine Reclamation Corp., 30 F.3d at 1522.

The Court must thus determine whether "events have so transpired" such that a judicial "decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Am. Bar Ass'n v. FTC, 636 F.3d 641, 645 (D.C. Cir. 2011) (citation omitted). If "intervening events make it impossible to grant the prevailing party effective relief," no live controversy remains. See Lemon v. Geren, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (citation omitted). Simply put, a case is moot if "the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)). In such a circumstance, the Court would lack jurisdiction and must dismiss the case. See Citizens for Responsibility and Ethics in Washington v. Wheeler, 352 F. Supp. 3d 1, 11 (D.D.C. 2019).

WTEA's prayer for relief essentially requests that the Court require EPA to complete the residual-risk review prior to or in conjunction with the five-year revision of the MACT

standards. See Compl., ¶ 35(b). The revision of those standards, however, which was at issue in East Yard, has now been proposed pursuant to a Consent Decree accepted by this Court. East Yard, No. 22-94, Dkt. No. 30 (D.D.C. Nov. 9, 2023). To be sure, that proposed rulemaking has not become final. See Standards of Performance for New Stationary Sources and Emission Guidelines for Existing Sources: Large Municipal Waste Combustors Voluntary Remand Response and 5-Year Review, 89 Fed. Reg. 4243 (proposed Jan. 23, 2024) (opening rulemaking for public comment until Mar. 25, 2024). By Plaintiff's own admission, however, EPA cannot effectuate the residual-risk analysis within the time that the Consent Decree provides for revising the MACT standards. See Compl., ¶ 31. As that request for injunctive relief cannot be granted, the request — and the suit — are moot. Although Plaintiff lodges an accompanying request for declaratory relief, id., ¶ 35(a), this cannot keep the suit alive on its own: "[W]here a plaintiff seeks both declaratory and injunctive relief pertaining to unlawful agency action, and where the latter has been mooted, an outstanding request for the former will not operate to bar mootness." Cierco v. Lew, 190 F. Supp. 3d 16, 27 (D.D.C. 2016) (citing City of Houston v. Dep't of Hous. & Urban Dev., 24 F.3d 1421, 1429 (D.C. Cir. 1994)). The outcome in East Yard has blown the final whistle for the relief Plaintiff seeks in its Complaint.

  Evidently hoping to carry its Complaint into extra time by moving the goalposts, WTEA argues for the first time in its Opposition that its "injury is redressable by an order . . . requiring EPA to perform the residual risk analysis regardless of whether that analysis precedes or postdates the five-year [MACT] review rulemaking." Opp. at 13. But that is inconsistent with the Complaint, which articulates a theory of injury based explicitly on the failure of the residual-risk analysis to precede or accompany the MACT review. See Compl., ¶ 29. Although Plaintiff seeks tardily to recast the Complaint's prayer for relief as a suggestion "as to what should be

5

done," see Opp. at 13, the Court "is not obliged to keep the case afloat both by ignoring [Plaintiff's] prayer and by envisaging what relief they might have sought — but did not — in their Complaint." Cierco, 190 F. Supp. 3d at 26.

\* \* \*

This ruling does not entirely spell doom for WTEA, however. The Court will dismiss only the Complaint, but not the case, and without prejudice. See Ciralsky v. CIA, 355 F.3d 661, 666–67 (D.C. Cir. 2004) (distinguishing between dismissing case and dismissing complaint only). It will give WTEA 30 days to file an Amended Complaint, which could seek, for instance, a residual-risk review independent of the MACT review. That said, Defendants raise some serious concerns with Plaintiffs' standing even to assert that challenge. The Court need not decide that here, but it warns Plaintiff that this will likely be a subject of future scrutiny in the event that the Complaint is amended.

**IV.     Conclusion**

For the foregoing reasons, this Court will grant Defendants' Motion to Dismiss and dismiss Plaintiff's Complaint without prejudice. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  March 13, 2024